OPINION OF THE COURT
Michael A. Ciaefa, J.
This case presents a particularly difficult issue of first impression: may a debt buyer, suing as the alleged assignee of a claimed consumer debt, be countersued for violating General Business Law § 349 based on allegations that it commenced the lawsuit without any evidence that could prove the claim?
General Business Law § 349 (a) broadly declares that “[deceptive acts or practices in the conduct of any business” in New York State are “unlawful.” If an assigned debt lawsuit is commenced and contains factual allegations attesting to the defendant’s liability, and if evidence to support the claim does not exist or is not readily available, this court holds that such conduct may violate General Business Law § 349. In such a case, a defendant receiving the complaint could reasonably be deceived, and conclude that the debt buyer either possesses evidentiary proof of the claim, or can easily obtain the necessary proof. Deceptive conduct, like this, falls squarely within the broad ambit of General Business Law § 349. The court sees no reason why a debt buyer should be deemed immune from liability under General Business Law § 349 simply because its deceptive actions occur in the context of pursuing civil litigation.
On the other hand, allegations of liability in an assigned debt matter may not be deemed “deceptive” when a debt buyer commences a lawsuit, in good faith, without having proof in hand, as long as evidence supporting the claim is readily available. While debt buyers bringing such cases should ordinarily obtain, and possess, evidentiary proof of the claim before commencing the lawsuit, failure to obtain such proof, in advance, does not *938 per se establish that the plaintiff’s actions are “deceptive” within the meaning of General Business Law § 349.
For the reasons explained more fully below, plaintiffs motion to dismiss defendant’s General Business Law § 349 counterclaim is granted in part and denied in part. To the extent defendant’s General Business Law § 349 counterclaim seeks to hold plaintiff liable simply because it failed to obtain admissible proof of the claim in advance of bringing suit, it fails to state a claim for relief under General Business Law § 349. However, reading the counterclaim broadly in a light most favorable to defendant, the General Business Law § 349 counterclaim is otherwise sufficient. Its factual allegations raise a potentially viable General Business Law § 349 cause of action against plaintiff, involving deceptive litigation practices which affect consumer interests and which caused defendant injury. Accordingly, plaintiffs motion to dismiss the remaining allegations of the General Business Law § 349 counterclaim is denied, and plaintiff is directed to serve an answer to defendant’s counterclaims within the time allowed by law. (See CPLR 3211 [f].)
Plaintiffs Lawsuit and Defendant’s Counterclaims
Plaintiff, Midland Funding, LLC, describes itself as “one of the nation’s biggest buyers of unpaid debt” (Midland Credit Management, Inc., Who is MCM?, Midland Funding LLC, http://www.midlandcreditonline.com/who-is-mcm/midland-funding-llc). Its filings in this court are prolific. Since the advent of e-courts case tracking in 2006, Midland Funding has filed more than 20,000 cases in Nassau District Court. Over the last six years, it has filed an average of more than 3,000 cases annually against individual defendants in this court. More than 2,000 of those cases are currently “open.”
The instant matter is one of those cases. In June 2012, plaintiff commenced this action against defendant, Adriana Giraldo, by filing a complaint seeking payment of a debt allegedly owed to its “predecessor in interest, Citibank USA, N.A.” The summons lists defendant’s address as being “102 Radcliffe Rd, Plainview, NY.” The stated basis for venue is “defendant’s residence.”
In plaintiff’s complaint, it alleges “upon information and belief’ that defendant “resides or has an office in the county in which this action was brought, or the defendant transacted business within the county in which this action is brought, either in person or through an agent and the instant cause of action arose out of said transaction.”
*939 Two causes of action are set forth in the complaint. The first cause of action alleges that plaintiffs “predecessor in interest . . . offered to open a credit card account ... in defendant’s name” and that defendant “accepted the offer by using the account.” Defendant allegedly “defaulted by failing to pay the balance due under the account.” A “demand for payment was made, but defendant failed to repay the balance owed.” Thereafter, the original creditor allegedly “sold the account, including all right, title and interest in and to the outstanding balance owed by defendant.” Plaintiff further asserts that it “purchased the account on December 23, 2010 and is now the owner and assignee of the account.” Despite “due demand” for the balance allegedly owed ($12,553.98 as of February 27, 2011), no part of the balance was paid. Accordingly, the first cause of action claims that defendant owes plaintiff that balance ($12,553.98), with interest.
The second cause of action seeks the same amount based upon allegations that plaintiff had “rendered to defendant a full and true account of the indebtedness owing by the defendant . . . , which account statement was delivered to and accepted without objection.”
The last paragraph of the complaint contains the following certification by one of plaintiffs attorneys at Cohen & Slamowitz, LLP: “The undersigned attorney hereby certifies that, to the best of his/her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the within complaint and the contentions therein are not frivolous as defined in Part 130-1.1 of the Rules of the Chief Administrator.”
Defendant answered the complaint through her attorney, Jesse Langel, Esq., in November 2012. In that answer, defendant generally denies plaintiffs allegations, she asserts 14 affirmative defenses, and she sets forth two detailed counterclaims. In pertinent part, the fifth affirmative defense alleges that plaintiff “lacks personal knowledge of the facts alleged in the complaint.” The sixth affirmative defense alleges, in turn, that “[a]ny alleged debt was never legally assigned” and that plaintiff “lacks standing.” The tenth affirmative defense asserts that plaintiff “is barred from any recovery herein by the doctrine of unclean hands for committing consumer violations as alleged in the defendant’s counterclaim[s] as asserted herein.”
The first counterclaim goes on to allege multiple violations of the Federal Fair Debt Collection Practices Act (15 USC § 1692 *940 et seq. [FDCPA]). According to counsel’s pleading, defendant “is a natural person who resided at all relevant times in Paris, France.” By letter from defendant’s attorneys dated March 26, 2011, plaintiff was “put on notice” that defendant “had lived outside the United States, in Paris, France since 2003 and could not have incurred the alleged debt.” Notwithstanding this communication, “neither the plaintiff, nor its attorneys . . . , conducted any meaningful . . . review” of the facts. Instead, plaintiff sued defendant “at a relative’s address.”
Furthermore, the counterclaim alleges that plaintiff “used false, deceptive and misleading means” to try to collect a debt in violation of several sections of the FDCPA. These acts included:
* bringing an action against defendant without any valid basis and without any valid evidentiary support;
* bringing an account stated claim against the defendant when no account statements were ever mailed to or received by defendant;
* bringing an account stated claim against the defendant without having in its possession admissible proof and/or any personal knowledge that any account statements were mailed to or received by the defendant;
* attempting to collect on an assigned account when the defendant had not been notified of any assignment;
* commencing a lawsuit for an allegedly assigned debt without a valid assignment actually having taken place;
* attempting to collect amounts, including contractual interest, without admissible proof of its legal authority to collect the same;
* misrepresenting defendant’s residence and the basis of venue; and
* maintaining its collection efforts against defendant after being made aware that defendant was not the true debtor.
Similar allegations form the basis for defendant’s second counterclaim. In pertinent part, the General Business Law § 349 counterclaim repeats and realleges the facts alleged elsewhere in the answer and counterclaims, and also alleges that plaintiff s wrongful acts and omissions included the following deceptive acts and practices:
* bringing a cause of action against the defendant pursuant to a retail installment credit agreement without having in its possession admissible proof of any agreement;
*941 * bringing an account stated claim against the defendant without having in its possession admissible proof and/or any personal knowledge that any account statements were mailed to or received by the defendant;
* attempting to collect on an assigned account when the defendant had not been notified of any assignment;
* commencing a lawsuit for an allegedly assigned debt without a valid assignment actually having taken place;
* attempting to collect amounts allegedly due without any indication how the amounts were calculated;
* attempting to collect amounts, including contractual interest, without admissible proof of legal authority to collect the same; and
* misrepresenting defendant’s residence and the basis of venue.
The second counterclaim further alleges that such deceptive acts and practices by the plaintiff occurred while it was engaging in a debt collection business “directed at consumers.” Its activities “are part of a recurring practice” of using a “business model” that has a tendency to “deceive and mislead” a significant percentage of New York consumers. As a result, defendant alleges she has “suffered pecuniary and non-pecuniary harm,” entitling her to actual damages, punitive damages, attorney’s fees and costs. Such pecuniary damages, as specified, include: “Counsel fees relating to credit repair and collections defense,” travel expenses, and other “costs associated with defending against the case wrongfully brought against her.” Her nonpecuniary damages include: “Sleep deprivation; anxiety; nervousness; fear; worry; fright; shock; strain to her marriage; humiliation and intimidation.”
Plaintiffs Motion and Defendant’s Opposition
By notice of motion dated December 5, 2012, plaintiff moves for an order dismissing defendant’s General Business Law § 349 counterclaim pursuant to CPLR 3211 (a) (7), and an order granting it an extension of time to reply or make a motion in response to defendant’s first counterclaim alleging violations of the FDCPA. Defendant opposes the motion.
Under the plain language of General Business Law § 349 (a), “[deceptive acts or practices” in the conduct of any business, trade, or commerce “are hereby declared unlawful.” In addition to granting the Attorney General the authority to seek injunctions and to pursue claims for restitution (see General Business *942 Law § 349 [b]), the statute grants a “right of action” to “any person who has been injured by reason of any violation of this section.” (General Business Law § 349 [h].)
Plaintiff concedes that a party properly pleads a claim under this section by alleging three elements: “first, that the challenged act or practice was consumer-oriented; second, that it was deceptive or misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive or misleading act.”
In addressing the second element, plaintiff contends that a party has “no cause of action under [General Business Law § 349] based on the improper filing of a lawsuit” because such actions can never be deemed “deceptive or misleading” to a defendant or “the consuming public at large.” In plaintiffs view, “ [i]f a defendant believes that legally it has no liability to a plaintiff ... or that a lawsuit is frivolous,” the defendant can deny the allegations and defend against the claims. However, when a defendant does so, the defendant’s denials prove that the plaintiffs actions lacked an ability to deceive. Thus, even if the court were to find that plaintiff “had no legal right to bring this lawsuit” or that plaintiff had “filed an improper, baseless and frivolous lawsuit,” plaintiff maintains that the crux of the allegations would fall outside the ambit of General Business Law § 349. Accordingly, it contends that defendant’s General Business Law § 349 counterclaim is deficient as a matter of law, and must be dismissed pursuant to CPLR 3211 (a) (7).
Plaintiff further contends that its alleged actions “also are not consumer oriented.” In support of this contention, it explains that one test for imposing liability under General Business Law § 349 is whether “[t]he conduct complained of . . .on its face, affect[s] the consuming public.” “In the case at bar, the conduct complained of, [involving] routine filing of frivolous lawsuits, does not on its face affect the consuming public.”
Finally, plaintiff argues that defendant failed to allege any injury “as a result of the[ ] alleged actions allegedly taken by Plaintiffs counsel.” According to plaintiff, “the claimed deception cannot itself be the only injury.”
Defendant’s counsel joins issue on all three points. He argues, inter alia, that plaintiff’s “rampant and well-documented” deceptive acts and practices “affect the consuming public at large” and are “not limited to the defendant.” He further contends that the language of General Business Law § 349 “is broad enough to include debt collection activities,” and that *943 “several courts have applied the statute to debt collection.” (See e.g. Sykes v Mel Harris & Assoc., LLC, 757 F Supp 2d 413 [SD NY 2010].) Moreover, he takes plaintiff to task for incorrectly claiming that defendant had not alleged damages in the General Business Law § 349 counterclaim.
Most importantly, defendant’s counsel attacks plaintiff’s “business practice of proceeding with litigation . . . despite a lack of crucial, legally admissible information.” “[T]he fact that debt buyers like Midland have limited information and proof of the validity of the debts they seek to enforce, and often fail to make a sufficient inquiry before filing suit, form the crux of defendant’s counterclaim.” In his view, such information should include:
* whether the original creditor extended credit to the alleged debtor;
* whether the alleged debtor failed to make payments;
* whether account statements were properly mailed to or received by the alleged debtor;
* whether the alleged amount due and owing is correct;
* what interest rate applied, and for what period;
* how the total amount due was calculated;
* what state’s law applies;
* whether the individual account has been properly assigned; and
* whether the alleged debtor has received notice of the assignment.
If a debt buyer fails to make “a sufficient inquiry” into these matters before filing suit, counsel maintains that plaintiffs acts and omissions, as alleged in the second counterclaim, can be found to constitute deceptive, consumer-oriented conduct within the ambit of General Business Law § 349’s proscription.
Discussion
When deciding a motion to dismiss made pursuant to CPLR 3211 (a) (7), the challenged pleading is “afforded a liberal construction.” (Leon v Martinez, 84 NY2d 83, 87 [1994].) “We accept the facts as alleged in the [pleading] as true, accord [the pleader] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory.” (84 NY2d at 87-88.) “[I]f from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail.” (Wilner v Allstate Ins. Co., 71 AD3d 155, 159 *944 [2d Dept 2010], quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977].)
General Business Law § 349 “prohibits deceptive and misleading business practices and its scope is broad indeed.” (Wilner v Allstate Ins. Co., 71 AD3d at 159.) The statute, on its face, applies to “virtually all economic activity,” providing the courts with the authority to “cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.” (Karlin v IVF Am., 93 NY2d 282, 290-291 [1999]; accord Wilner v Allstate Ins. Co., 71 AD3d at 160.)
As currently understood, the law “encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law.” (Wilner v Allstate Ins. Co., 71 AD3d at 160, quoting Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201, 210 [2001].) It was intended to be “broadly applicable, extending far beyond the reach of common law fraud.” (Wilner v Allstate Ins. Co., 71 AD3d at 160, quoting New York v Feldman, 210 F Supp 2d 294, 301 [SD NY 2002]; see also Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 343 [1999].)
“Stating a cause of action to recover damages for a violation of General Business Law § 349 is fairly straightforward.” (Wilner v Allstate Ins. Co., 71 AD3d at 161.) In order to properly plead a cause of action under General Business Law § 349, the party pleading the claim “should identify consumer-oriented misconduct which is deceptive and materially misleading to a reasonable consumer, and which causes actual damages.” (Wilner v Allstate Ins. Co., 71 AD3d at 161-162, citing inter alia Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995].)
As a threshold matter, a party claiming the benefit of General Business Law § 349 “must charge conduct. . . that is consumer-oriented.” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25.) Unique, private contract disputes do not fall into this category. (Id.) On the other hand, a General Business Law § 349 pleading need not allege a “pattern of deceptive behavior.” (Id.) Rather, the “[c]onsumer-oriented conduct” requirement simply contemplates a challenge to acts and practices which “have a broader impact on consumers at large.” (Id.)
Most important, the party’s pleading must also allege “an act or practice that is deceptive or misleading in a material way.” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland *945 Bank, 85 NY2d at 25.) However, “[i]ntent to defraud and justifiable reliance . . . are not elements of the statutory claim.” (Wilner v Allstate Ins. Co., 71 AD3d at 162, quoting Small v Lorillard Tobacco Co., 94 NY2d 43, 55 [1999], citing Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 26.)
Instead, the leading cases have adopted “an objective definition of deceptive acts and practices, . . . limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 26; accord Karlin v IVF Am., 93 NY2d at 294.) The latter test “complements the definition applied by the Federal Trade Commission” in matters involving consumer fraud. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 26.) Applying such an “objective definition,” the court may determine, either “as a matter of law or fact,” whether the allegations are sufficient or not to set forth a viable General Business Law claim. (Id.)
Finally, while the statute does not require proof of justifiable reliance, a party seeking compensatory damages must allege that the deceptive acts and practices at issue “caused actual, although not necessarily pecuniary, harm.” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 26; accord Wilner v Allstate Ins. Co., 71 AD3d at 162.) A party adequately pleads a claim for damages under General Business Law § 349 by alleging the retention of an attorney as a result of opponent’s offending conduct. (Wilner v Allstate Ins. Co.) If successful, the party may recover “actual damages in any amount,” together with treble damages, punitive damages, and attorney’s fees. (Wilner v Allstate Ins. Co., 71 AD3d at 167-168.)
Defendant’s General Business Law counterclaim, on its face, appears to satisfy each of the above elements. It alleges (¶ 36) that plaintiffs acts and practices “have been entirely directed at consumers” and “have a broad impact on the New York consuming public.” Furthermore, plaintiffs collection activities in “thousands of debt collection lawsuits” include acts and practices which allegedly “have the capacity and tendency to deceive and mislead a significant percentage of New York consumers” (¶¶ 37, 39). Finally, defendant allegedly suffered “pecuniary and non-pecuniary harm” as a result of plaintiffs deceptive practices (¶ 43).
Addressing the first element — “consumer-oriented” conduct— defendant’s General Business Law counterclaim is plainly suf *946 ficient. As the parties’ moving papers confirm, “the conduct complained of,” at its heart, involves the “routine filing” of assigned debt lawsuits by plaintiff “despite a lack of crucial, legally admissible information” or “sufficient inquiry” into whether the claims are meritorious. When considered together with defendant’s allegation that plaintiffs deceptive acts and practices “affect the consuming public at large” and are “not limited to the defendant,” the challenged conduct and practices clearly raise issues beyond any “private contract disputes.” Such allegations therefore fall within the broad scope of General Business Law § 349.
The second element, however, is more problematic. It presents several complex issues requiring further analysis. Before closely analyzing defendant’s pleading respecting the allegations of deception, the court needs to address an important, unsettled preliminary issue raised by plaintiffs motion: namely, whether a cause of action alleging deceptive conduct under General Business Law § 349 may be set forth “based on the improper filing of a lawsuit.”
Contrary to plaintiff’s contention, the decision in Varela v Investors Ins. Holding Corp. (81 NY2d 958 [1993]) did not address the issue. In Varela, the defendant was sued under General Business Law § 349 after it refused to enter a satisfaction of judgment, as requested, unless the plaintiffs paid $60 to defendant for issuing and filing the satisfaction. In dismissing the General Business Law § 349 cause of action, the Court of Appeals simply held that the defendant’s actions were not, in fact, deceptive or misleading. Whether or not the defendant’s actions were improper, defendant’s conduct “did not mislead plaintiffs in any material way.” (Id. at 961.) Accordingly, defendant’s refusal to issue and file the satisfaction “did not constitute ‘deceptive acts’ within the meaning of the statute.” (81 NY2d at 961.)
Nothing in the Varela decision suggests that a party’s litigation activities are per se immune from the reach of General Business Law § 349. While this court has found no New York State court cases directly on point, plaintiff has failed to cite any New York State case law which precludes a General Business Law § 349 claim, as a matter of law, under circumstances akin to those at bar. To the contrary, since the decision in Varela was handed down in 1993, our state’s courts have broadly applied the statute to a wide variety of circumstances, involving all sorts of different types of consumer-oriented deceptive acts *947 and practices. Under the logic of these rulings, the plain language of General Business Law § 349, read together with its legislative history, provides no room for a “blanket exemption” for deceptive practices in the context of civil litigation. (Cf. Karlin v IVF Am., 93 NY2d at 291 [holding that “(a) blanket exemption for providers of medical services and products” in cases involving “unscrupulous business practices” would be contrary to “the plain language” of General Business Law § 349 and the legislative objectives of the section].)
Equally important, a number of federal court judges have recently ruled that “deceptive practices” claims may be brought, under federal and/or state law, to challenge “false and deceptive” representations by debt buyers in legal papers filed in state court proceedings. In Sykes v Mel Harris & Assoc., LLC (757 F Supp 2d at 423-424, 428), for example, Judge Denny Chin denied a motion to dismiss FDCPA and General Business Law § 349 claims against a debt buyer (LR Credit) and its lawyers (Mel Harris & Associates) founded upon allegations that defendants filed state court debt collection actions and affidavits of merit which contained false or deceptive representations about the status and character of the alleged debt.
In so ruling, Judge Chin favorably cited a District Court decision from Georgia, Kuria v Palisades Acquisition XVI, LLC (752 F Supp 2d 1293, 1302 [ND Ga 2010]), where the court denied a motion to dismiss deceptive practices claims against a debt buyer under the FDCPA and the Georgia Fair Business Practices Act, alleging that the defendant had “sued [plaintiff] on a debt that he did not owe and . . . could not ever prove.” Since the debt buyer in that case, Palisades Acquisition, allegedly “lacked knowledge of the validity of the underlying debt” when it filed suit, and “never intended to investigate or verify the debt’s validity,” plaintiff’s deceptive practices claims were deemed sufficient on their face. (752 F Supp 2d at 1301-1303.)
More recently, in Samuels v Midland Funding, LLC (2013 WL 466386, 2013 US Dist LEXIS 17085 [SD Ala, Feb. 7, 2013, No. 12-0490-WS-C]), another federal judge denied a similar motion by defendant, Midland Funding, for judgment on the pleadings. The complaint in that case alleged that Midland filed suit upon a purchased debt claim
“without taking reasonable steps to ensure the validity of the debt and with no intention of obtaining evidence to prove its claim but with the intention to intimidate or coerce the plaintiff into payment or *948 suffering default judgment by falsely implying . . . that it was willing to prove its claim in court” (Samuels v Midland Funding, LLC, 2013 WL 466386, *1, 2013 US Dist LEXIS 17085, *2-3).
Again, the mere fact that Midland’s conduct took place in the course of litigation was not a basis for rejecting a claim that its practices were improper and deceptive.
This court agrees with the logic and thrust of these decisions. It accordingly holds, without qualification, that “deceptive” litigation practices by a debt buyer may form the basis for a General Business Law § 349 claim or counterclaim.
That holding, however, does not end the court’s analysis. Two points require further clarification. First, the scope of this court’s holding is limited to circumstances involving pleadings by a debt buyer which are likely to deceive or mislead a reasonable consumer in a material way. Viewed from that perspective, a debt buyer’s complaint, alleging the bare bones elements of an assigned debt cause of action, cannot reasonably be read as implying or suggesting that the debt buyer has, in hand, the documentary proof necessary to establish a prima facie case. The fact that the debt buyer lacks such documentary proof, when commencing the action, cannot by itself be deemed a deceptive practice. Again, looking to federal court precedents, the court finds them instructive. (See e.g. Harvey v Great Seneca Fin. Corp., 453 F3d 324 [6th Cir 2006] [filing of debt collection suit without having immediate means of proving debt did not constitute deceptive practice under FDCPA]; compare Sykes v Mel Harris & Assoc., LLC, 757 F Supp 2d at 424 [“Plaintiffs do not merely allege that. . . defendants ‘lack physical evidence of the debt,’ but that they knowingly authorized (filing of) false affidavits of merit — misleading both the Civil Court and consumer-defendants”]; Simmons v Portfolio Recovery Assoc., LLC, 2012 WL 222935, *4-5, 2012 US Dist LEXIS 8454, *13, 15 [ED Tenn, Jan. 25, 2012, No. 3:11-CV-280] [while the filing of a debt collection action “without immediate proof’ does not constitute a “false or deceptive” practice under the FDCPA, debt buyer’s alleged “pattern and practice” of making “false or deceptive representations about the status or character of the underlying debt” could violate the FDCPA].)
Consequently, to the extent that defendant’s counterclaim seeks to hold plaintiff liable, under General Business Law § 349, on the premise that plaintiffs wrongful and deceptive acts and omissions included “bringing a cause of action against the de *949 fendant . . . without having in its possession admissible proof’ of the underlying credit agreement or any mailed account statements, such allegations fail to state a claim under General Business Law § 349. Those parts of the counterclaim are accordingly dismissed.
Conversely, the remainder of the General Business Law § 349 counterclaim, read broadly together with other allegations in defendant’s affirmative defenses and her FDCPA counterclaim, sets forth a sufficient factual and legal basis for General Business Law § 349 liability. Accepting defendant’s factual allegations as true, plaintiffs complaint in this case is founded upon false, deceptive and misleading allegations of liability for a legally meritless assigned debt claim. If plaintiff commenced an action against defendant without any valid factual basis, predicated upon false allegations and knowing misrepresentations, and backed by an attorney’s Rule 130 certification (Rules of Chief Admin of Cts [22 NYCRR] § 130-1.la), a finder of fact could well conclude that such actions would likely mislead a reasonable consumer. A consumer, unschooled in the law, could be readily deceived into believing that the plaintiff would not be bringing the lawsuit unless it either possessed evidentiary proof of the claim, or could easily obtain such proof. If neither is true, it provides a sound basis for finding a consumer-oriented deception.
It is no answer to argue that an “improper, baseless and frivolous lawsuit” can never be deceptive. From the perspective of an average reasonable consumer, such a lawsuit could deceive or mislead a person into believing that the debt buyer would likely recover a judgment if the consumer did not pay the alleged debt or agree to a proposed settlement. Indeed, based upon this court’s knowledge of the debt buyer’s business model and its experience hearing hundreds of assigned debt cases, it appears that debt buyers routinely file lawsuits and then actively seek payments and out of court settlements from many, many consumers based upon this very real and frequently persuasive deception. (See e.g. LR Credit 21 LLC v Paryshkura, 30 Misc 3d 805, 808 [Nassau Dist Ct 2010].)*
Nor is it relevant that other remedies may be employed to sanction frivolous and meritless debt collection lawsuits. While *950 the conduct alleged may also violate other laws which authorize other remedies, see e.g., the FDCPA (15 USC § 1692e), Judiciary Law § 487, and Rule 130 (22 NYCRR 130-1.1, 130-1.1a), the private right of action provisions of General Business Law § 349 are intended to supplement any other applicable remedies. As explicitly provided in General Business Law § 349 (g), the statute applies to “all deceptive acts or practices . . . whether or not subject to any other law of this state.”
Little more need be said to address plaintiffs remaining arguments. Contrary to plaintiffs contention, defendant is not alleging that the claimed deception is her only injury. Her alleged injuries, rather, include pecuniary losses such as attorney’s fees and costs reasonably incurred in the course of defending against plaintiffs lawsuit. Such allegations are more than adequate to plead a claim for damages under General Business Law § 349 (h). (See e.g. Wilner v Allstate Ins. Co., 71 AD3d at 167 [“The plaintiffs alleged that they were forced to pay for an attorney, and thus adequately pleaded damages under General Business Law § 349”]; compare Ovitz v Bloomberg L.P., 77 AD3d 515, 516 [1st Dept 2010] [“Nor did plaintiff allege actual injury resulting from the alleged deceptive practices, since defendants did not commence enforcement proceedings against plaintiff and are not seeking to collect fees or payments from plaintiff’].)
For all these reasons, the court rejects plaintiffs challenge to the remainder of the General Business Law § 349 counterclaim. The merits of that counterclaim accordingly must await further proceedings. Plaintiff is directed to serve and file an answer to defendant’s General Business Law and FDCPA counterclaims, forthwith. Its time to do so is extended until 10 days after service of a copy of this order upon its attorneys, with notice of entry. (See CPLR 3211 [f].)
Conclusion
In conclusion, based upon the allegations made by defendant in her answer and counterclaims, and the court’s analysis of applicable state and federal court precedents, this court holds that deceptive conduct by a debt buyer in the course of civil litigation may violate a consumer’s legal rights under General Business Law § 349. When a debt buyer seeks the court’s aid in enforcing an assigned debt claim, the debt buyer should not commence the action unless it can readily obtain admissible *951 proof that would make out a prima facie case. Such proof should include evidence that it actually owns the debt, that the defendant was given notice of the assignment, and that the underlying debt claim is meritorious. (See generally Midland Funding LLC v Wallace, 34 Misc 3d 1206[A], 2012 NY Slip Op 50008[U] [Mt. Vernon City Ct 2012]; CACH LLC v Fatima, 32 Misc 3d 1231[A], 2011 NY Slip Op 51510[U] [Nassau Dist Ct 2011]; DNS Equity Group Inc. v Lavallee, 26 Misc 3d 1228[A], 2010 NY Slip Op 50298[U] [Nassau Dist Ct 2010]; Palisades Collection, LLC v Kedik, 67 AD3d 1329 [4th Dept 2009]; PRA III, LLC v Gonzalez, 54 AD3d 917 [2d Dept 2008].) If it commences such an action without having such readily available proof, and if it turns out that such proof is not readily available, the debt buyer may end up not only losing the case, but may also be found liable for substantial compensatory damages, punitive damages, and attorney’s fees to the extent allowed by law.

 See generally Claudia Wilner et al., The Legal Aid Society et al., Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010); Rick Jurgens & Robert J. Hobbs, National Consumer Law Center, The Debt Machine: How the Collection Industry Hounds Consumers and Overwhelms Courts (July 2010); Anika Singh, The Urban Justice *950 Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor (Oct. 2007).