# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 12
Steven Plavin,
     Appellant,
   v.
Group Health Incorporated,
     Respondent.

Caitlin Halligan, for appellant.
John Gleeson, for respondent.

STEIN, J.:

The United States Court of Appeals for the Third Circuit has asked us to decide, in essence, whether plaintiff has sufficiently alleged consumer-oriented conduct to assert claims under General Business Law §§ 349 and 350 for damages incurred due to an

- 1 -

insurance company's alleged materially misleading representations made directly to the City of New York's employees and retirees about the terms of its insurance plan to induce them to select its plan from among the 11 health insurance plans made available to over 600,000 current and former City employees. Because the complaint sufficiently alleged consumer-oriented conduct, we answer in the affirmative.

I.

The City offers its employees and retirees their choice of health insurance plans as part of their compensation and retirement packages. Plaintiff is a retired New York City police officer, who received health insurance coverage through the health care plan of defendant Group Health Incorporated (GHI). GHI is a not-for-profit corporation, operating as an indemnity insurer, that offers City employees its "Comprehensive Benefits Plan," which provides in-network coverage and partial reimbursement for out-of-network services (the GHI Plan or Plan).

Plaintiff alleged that, at all relevant times, the GHI Plan was among 11 plans the City offered to approximately 600,000 employees and retirees on an annual or biannual basis.[1] The terms of these plans were negotiated between the City, the insurance vendors, and the New York City Municipal Labor Committee, which was comprised of various employee unions. Prior to an open enrollment period, the New York City Office of Labor

---

[1] This case arises from a motion to dismiss in federal district court and comes to us in the context of our acceptance of certified questions from the United States Court of Appeals for the Third Circuit. In certifying these questions, the Third Circuit stated that it would "take all well-pled allegations of the complaint as true, and . . . draw all inferences in favor of [plaintiff]" (2019 WL 1965741, *1 n 4, 2019 US App LEXIS 13573, *3 n 4, citing McTernan v City of York, Penn., 577 F3d 521, 526 [3d Cir 2009]).

Relations, on behalf of the City, assembled and distributed to employees and retirees a summary program description, which contained health plan descriptions prepared by each insurer. Plaintiff alleged that this document—the content of which was not reviewed by the City or Municipal Labor Committee—was the only one distributed to City employees and retirees regarding the GHI Plan before they were required to select a plan. In addition, as pertinent to plaintiff's claims, GHI created its own online summary of benefits and coverage, which was available on its website. If an employee or retiree selected the GHI Plan, the City sponsored and paid the entire cost of the premiums therefor.

As relevant here, the complaint alleges that the summary program description and online summary (collectively, the summary materials) represented the GHI Plan as furnishing its members with extensive out-of-network coverage subject to deductibles and coinsurance, and "the freedom to choose any provider worldwide." Further, the summary materials stated that the GHI Plan contained "additional Catastrophic Coverage" for "100% of the Catastrophic Allowed Charge as determined by GHI" if a member's out-of-network expenses for predominantly in-hospital care exceeded $1,500, and also represented that the Plan offered its members an optional rider, at an additional cost, that would provide enhanced coverage for certain services, increasing out-of-network reimbursements "on average, by 75%." Relatedly, GHI stated in the materials that the out-of-network reimbursement fee schedule was "originally based on 1983 procedure allowances," and that some of the rates would be updated "periodically."

As further alleged in the complaint, beginning in 1984, plaintiff annually selected the GHI Plan and optional rider as his family's health insurance plan, yet he was not

provided with a certificate of insurance or a reimbursement schedule. From 2014 through 2015, plaintiff's wife received numerous medical services, which GHI determined were out-of-network. As a result, contrary to plaintiff's expectations based on the summary materials provided or available to him, GHI covered only a modicum of the medical claims, leaving plaintiff responsible for payment of the balance. For example, one medical provider billed $512.66 for services, for which GHI ultimately allowed reimbursement of $21.

Plaintiff commenced the underlying action in the United States District Court for the Middle District of Pennsylvania claiming, among other things, violations of General Business Law §§ 349 and 350 based on GHI's allegedly misleading representations to City employees and retirees about the terms of its Plan. Plaintiff alleged that GHI made misleading statements and omissions in its summary materials regarding the Plan's out-of-network reimbursement rates, how often the reimbursement rate schedule was updated, the catastrophic coverage reimbursement rate, and the breadth of coverage of the optional rider—in order to induce plaintiff, and others similarly situated, to select the GHI Plan.[2]

---

[2] Prior to plaintiff's commencement of this action, the New York State Attorney General conducted an investigation, and concluded that GHI's representations in connection with its summary materials—substantially similar as those at issue here—repeatedly violated General Business Law §§ 349 and 350. The Attorney General reasoned that GHI's representations were harmful because City "employees and retirees cannot make well-informed decisions in selecting the appropriate health plan, if they are not afforded adequate information regarding the substantial out-of-pocket costs they may incur if they receive services from out-of-network providers." As a result, in 2014, GHI entered into an Assurance of Discontinuance, wherein GHI did not admit guilt, but agreed to several remedial measures, including modification of all of its "consumer-facing materials" to "ensure that NYC employees and retirees are presented with clear information."

Additionally, plaintiff averred that GHI was the sole creator of its summary materials, and that the role of the New York City Office of Labor Relations was limited to assembling and distributing the program description.

GHI filed a pre-answer motion to dismiss the complaint for failure to state a claim, pursuant to Federal Rules of Civil Procedure rule 12 (b) (6). The District Court concluded that plaintiff had not adequately pleaded that, among other things, GHI's conduct was consumer-oriented (see 323 F Supp 3d 684, 695-698 [MD Pa 2018]).[3] Initially, the court rejected plaintiff's argument that GHI's alleged misconduct was consumer-oriented simply because it affected numerous City employees and retirees, reasoning that "the fact that a large class of members is affected [did] not automatically transform the plan into something that has 'a broader impact on consumers at large'" (id. at 696, quoting Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995]). However, the court noted that, by virtue of the large number of City employees, the City was "a powerful party in negotiations with insurance companies such as [GHI]" (id.). The court then opined that "the alleged deception [arose] out of a private contract negotiated between" GHI and the City—"two sophisticated institutions" (id.)—and, comparing this case to New York Univ. v Continental Ins. Co. (NYU) (87 NY2d 308 [1995]), concluded that plaintiff was "not a mere consumer of the public" because the City had contracted with GHI on behalf

---

[3] The District Court further concluded that plaintiff's "[General Business Law] claims separately fail[ed] because the [c]omplaint [had] not alleged materially misleading statements" (323 F Supp 3d 684, 702 [2018]).

of its employees and, therefore, "[t]he contract was aimed to benefit only a circumscribed

class of individuals" (id.).  Thus, the court held that

> "[b]ecause there is no indication in the [c]omplaint that the plan
> would have been available to anyone who was not an employee
> of the City of New York, and because it is undisputed that
> [plaintiff's] receipt of benefits from [GHI] arises from a
> contractual policy, [plaintiff's General Business Law] claims
> fail to plead consumer-oriented conduct."

(id. at 698).

Upon plaintiff's appeal, the United States Court of Appeals for the Third Circuit

determined that the dispositive issue was whether GHI had engaged in consumer-oriented

conduct.[4]  Because, in its view, existing New York law did not clearly dictate the outcome

of that issue, the Circuit Court certified the following questions:

> "Where a contract of insurance is negotiated by sophisticated
> parties such as the City of New York and an insurance
> company, and where hundreds of thousands of City employees
> and retirees are third-party beneficiaries of that contract, and
> where the insurance company's policy created pursuant to the
> contract is one of several health insurance policies from which
> employees and retirees can select, has the insurance company
> engaged in 'consumer-oriented conduct' under the GBL when:
>
> "(1) The insurance company drafts summary plan information
> that allegedly contains materially misleading
> misrepresentations and/or omissions about the coverage and
> benefits of the insurance policy and sends these summary
> materials to the City, and the City does not check or edit these
> materials before sending them on to the City employees and
> retirees; OR

___

[4] In making this determination, the Third Circuit concluded that, if the alleged conduct was consumer-oriented, "the dismissal [would] not be affirmed because GHI's statements and omissions, as alleged, [were] materially misleading" (2019 WL 1965741, *3, 2019 US App LEXIS 13573, *8).  That issue was not the subject of these certified questions and, therefore, is not before this Court.

"(2) The insurance company directs City employees and retirees to information on the insurance company's website that allegedly contains materially misleading misrepresentations and/or omissions about the coverage and benefits of the insurance policy?"

(2019 WL 1965741, *3-4, 2019 US App LEXIS 13573, *8-9).

We accepted these certified questions (33 NY3d 998 [2019]), and now answer them in the affirmative.

## II.

In 1970, the legislature enacted General Business Law § 349, which declared unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" (GBL § 349 [a]). Similarly, General Business Law § 350, enacted in 1963, states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state" shall be unlawful. These consumer protection laws were passed in response to an "urgent need for legislation striking down all forms of deceptive acts and practices" (L 1970, ch 43, Attorney General's Mem, 1970 NY Legis Ann at 92; see Ltr from NY Dept of Law at 1, Bill Jacket, L 1963, ch 813 [section 350 was enacted "to provide needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State"]). Although initially only the Attorney General's Office could sue to enforce the statutes, the legislature subsequently amended both section 349 and 350 to add a private right of action for "any person who has been injured by reason of any violation of th[ese] section[s]," allowing injunctive relief and damages, as well as

reasonable attorney's fees (GBL § 349 [h]; see GBL § 350-e [3]; see also L 1980, chs 345, 346; Governor's Approval Mem, Bill Jacket, L 1980, ch 345).

This Court has recognized that General Business Law §§ 349 and 350 "on their face apply to virtually all economic activity, and their application has been correspondingly broad" (Karlin v IVF Am., 93 NY2d 282, 290 [1999] [footnote omitted]); accord Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d 200, 205 [2004]; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 324 [2002]; Small v Lorillard Tobacco Co., 94 NY2d 43, 55 [1999]). We have explained that, to state a claim under sections 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice" (Koch v Acker, Merrall & Condit Co., 18 NY3d 940, 941 [2012]; see Goshen, 98 NY2d at 324 n 1). Thus, a plaintiff claiming the benefit of either section 349 or 350 "must charge conduct of the defendant that is consumer-oriented" or, in other words, "demonstrate that the acts or practices have a broader impact on consumers at large" (Oswego, 85 NY2d at 25).

In Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, which first described the scope of consumer-oriented conduct for purposes of these statutes, the defendant bank provided forms and advice to the plaintiffs—not-for-profit associations that opened savings accounts—that were also supplied to anyone who came into the bank seeking to open certain savings accounts (see id. at 23). However, the defendant did not disclose that it was opening accounts for the plaintiffs that capped the amount of principal on which interest would be paid, even though the plaintiffs qualified for not-for-profit

accounts, which had no such cap; nor did the defendant initially reveal that interest would not be paid on deposits in excess of $100,000 (see id.). Only after their accounts had been open for seven years did defendant inform plaintiffs that it had not been paying interest over the cap (see id. at 24). This Court concluded that the defendant's conduct was "consumer-oriented" because the defendant "dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the [plaintiffs] with standard documents presented to customers upon the opening of accounts" (id. at 26). Additionally, the account openings were not "private in nature or a single shot transaction" (id. [internal quotation and citation omitted]). Thus, we held that the plaintiffs "satisfied the threshold test in that the acts they complain[ed] of [were] consumer-oriented in the sense that they potentially affect[ed] similarly situated consumers" (id. at 26-27).

In Gaidon v Guardian Life Ins. Co. of Am., the defendant insurance companies had given the plaintiffs a standard marketing presentation and prepared for each of them a personalized illustration demonstrating that the life insurance policy the defendants offered eventually would result in a "vanishing premium"—namely, "that out-of-pocket premium payments would vanish within a stated period of time" (94 NY2d 330, 338 [1999]). The illustrations, the plaintiffs contended, "were premised on dividend projections that [defendants] knew or should have known were untenable" (id. at 339). We held that the defendants' conduct was consumer-oriented because, "[i]n contrast to a private contract dispute as to policy coverage, the practices before us involved an extensive marketing scheme that had 'a broader impact on consumers at large'" (id. at 344 [citation omitted], quoting Oswego, 85 NY2d at 25). Similarly, in Karlin v IVF Am., we applied General

Business Law §§ 349 and 350 to medical service providers and held that a plaintiff can sustain consumer protection claims based on "deceptive acts and false advertising" concurrently with medical malpractice claims, so long as the consumer protection claims "alleged conduct beyond the purview" of malpractice (id. at 292-293). We explained that the "[d]efendants' alleged multi-media dissemination of information to the public [was] precisely the sort of consumer-oriented conduct that is targeted by General Business Law §§ 349 and 350 . . . even though the subject of the conduct was in vitro fertilization" (id. at 293).

In contrast, we concluded in NYU that a General Business Law § 349 claim does not lie when the plaintiff alleges only "a private contract dispute over policy coverage and the processing of a claim which is unique to the[] parties, not conduct which affects the consuming public at large" (87 NY2d at 321 [internal quotation marks omitted]). We observed that the parties in question "were a major university acting through its director of insurance, and a large national insurance company," and "[t]he sale was handled by one of the largest brokerages in the Nation, . . . which managed, through negotiation, to obtain several enhancements to the policy for plaintiff's benefit and assisted it in presenting its loss claim to [defendant]" (id.). Additionally, we noted that the contract in NYU was not "the modest type of transaction the statute was primarily intended to reach" (id. [internal quotation marks and citation omitted]). Juxtaposing the facts of Oswego—where the bank forms and the advice had been supplied to "the consuming public at large, and in which the parties occupied disparate bargaining positions"—we held that the plaintiff in NYU

had "not met the threshold requirement because defendants' acts in selling [the] policy and handling the claim under it [did] not constitute consumer-oriented conduct" (id.).

### III.

Here, although there was an underlying insurance contract negotiated by sophisticated entities—only one of which is a party to this action—neither plaintiff, nor any of the other hundreds of thousands of employees and retirees who participated in the GHI Plan, were participants in its negotiation and, critically, that negotiation was followed by an open enrollment period, which exposed City employees and retirees to marketing resembling a traditional consumer sales environment. During the open enrollment period, the employees and retirees could select only one of 11 previously-negotiated health insurance plans offered as part of their compensation and retirement packages from the City, and the insurers were able to market their health care plans directly to the employees and retirees. Significantly, it is the allegedly misleading summary materials that are the subject of plaintiff's case—not the contract between the City and GHI, which purportedly was never provided to City employees and retirees. Plaintiff alleged that GHI created misleading benefit and coverage summaries, which it published on its website and caused to be distributed by the City to all similarly situated employees and retirees, and that this marketing was critical to GHI's effort to induce City employees and retirees to select its Plan. Plaintiff asserted that GHI collected premiums only for its Plan, and it was, therefore, in GHI's financial interest for individual City employees and retirees to choose its Plan over the other available options. Simply put, plaintiff alleged that GHI was incentivized by the competition created during the open enrollment period to leverage its information

advantage in order to gain the business of the employees and retirees over other insurers. In that manner, the open enrollment period resembles the sort of sales marketplace— characterized by groups of similarly-situated consumers subjected to the competitive tactics of a relatively more powerful business—that GBL claims were intended to address.

Plaintiff further claimed that he relied on the summary materials in selecting GHI's Plan and rider which, according to plaintiff, did not cover out-of-network procedures to the extent that the summary materials led him to expect, thereby causing plaintiff's alleged damages. Thus, plaintiff's complaint alleged claims that arose from the allegedly deceptive marketing materials distributed to plaintiff and the other City employees in order to induce them to select the GHI Plan over the other options available to them, as well as to pay additional premiums for the allegedly worthless out-of-network rider. Under these circumstances, "plaintiff[] ha[s] satisfied the threshold test" by alleging that the marketing actions "are consumer-oriented in the sense that they potentially affect similarly situated consumers" (Oswego, 85 NY2d at 26-27). That is, GHI's alleged "dissemination of information to" hundreds of thousands of City employees in order to solicit their selection of its plan "is precisely the sort of consumer-oriented conduct that is targeted by General Business Law §§ 349 and 350" (Karlin, 93 NY2d at 293).

Finally, we note that the General Business Law provisions at issue do not impose a requirement that consumer-oriented conduct be directed to all members of the public and, indeed, we have never implied that such a requirement exists. Here, by providing a choice of 11 options, the City created a health insurance marketplace for its approximately 600,000 employees and retirees, who were not direct parties to the contracts negotiated

between the City and insurance vendors.  GHI's summary materials, prepared and edited

solely by GHI, contained the only information provided to City employees and retirees

when determining whether to select GHI's Plan.  Under these circumstances, we hold that

the complaint adequately alleged consumer-oriented conduct (see Gaidon, 94 NY2d at 344;

Karlin, 93 NY2d at 293; Oswego, 85 NY2d at 25; cf. NYU, 87 NY2d at 321).

     Accordingly, the certified questions should be answered in the affirmative.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Following certification of questions by the United States Court of Appeals for the Third
Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this
Court's Rules of Practice, and after hearing argument by counsel for the parties and
consideration of the briefs and the record submitted, certified questions answered in the
affirmative. Opinion by Judge Stein. Chief Judge DiFiore and Judges Rivera, Fahey,
Garcia, Wilson and Feinman concur.

Decided March 24, 2020