**WARNER THEATRE ASSOCIATES LIMITED PARTNERSHIP,** Plaintiff–Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

**Docket No. 97–9552.**

United States Court of Appeals, Second Circuit.

Argued May 20, 1998.

Decided July 6, 1998.

David A. Cutner, Cutner & Associates, New York City, (Debra I. Resnick, of counsel), for Plaintiff–Appellant.

Anthony Zitrin, Law Offices of Donald J. Harman, New York City, for Defendant–Appellee.

Before: WINTER, Chief Judge, JACOBS, Circuit Judge, and CARMAN, Judge.*

WINTER, Chief Judge:

This appeal involves the effect of specific disclaimers regarding the terms of potential financing in a negotiation agreement. Warner Theatre Associates Limited Partnership ("Warner") appeals from Judge Sotomayor's dismissal of its complaint pursuant to Feder-

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

al Rule of Civil Procedure 12(b)(6) for failure to state a claim. In its complaint, Warner alleged that it was fraudulently induced to enter into an agreement to pay the appellee, Metropolitan Life Insurance Company ("MetLife"), $600,000 after MetLife promised to "consider and negotiate" the refinancing of a mortgage loan. Warner alleged that it paid this money only because agents of MetLife falsely indicated that it would accommodate Warner's desire to preserve existing subordinate financing. In addition, Warner claimed that MetLife was unjustly enriched by the negotiation fee, that MetLife breached an implied covenant of good faith and fair dealing when negotiating with Warner, and that the negotiation agreement was the product of a mutual mistake of fact. The district court dismissed Warner's complaint. We affirm.

## BACKGROUND

We of course review, *de novo*, the district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and accept as true the factual allegations of the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). The allegations in Warner's complaint are as follows. In 1995, Warner sought to refinance a $146 million mortgage on a building it owned in Washington, D.C. To this end, Warner approached MetLife and a number of other potential lenders. Warner advised these lenders that several Dutch pension funds and insurance companies were providing funding for the Warner building through loans made by Warner Building C.V. and Baywater C.V., foreign companies formed and capitalized for the purpose of making the loans. The Warner Building C.V. loans were to be secured by third and fourth deeds of trust on the Warner building. Further, Warner informed potential lenders that, for tax purposes, it wanted the Warner Building C.V. and Baywater C.V. loans combined in a real estate investment trust secured by a third deed of trust. Knowing that Warner desired this structure as part of any refinancing, MetLife "repeatedly assured [Warner] that a workable solution would be found to preserve the third deed of trust."

During March 1996, the negotiations between Warner and MetLife were put on hold because Warner believed that it had made satisfactory refinancing arrangements with a consortium of Japanese banks. These arrangements were never consummated, however, and Warner sought to reopen negotiations with MetLife. MetLife agreed to reopen negotiations on the condition that Warner enter into a negotiation agreement and pay MetLife a $600,000 negotiation fee. The negotiation agreement stated that "[t]he Negotiation Fee has already been earned by [MetLife], and the Negotiation Fee shall not be returned to Warner under any circumstances whatsoever." In addition, the agreement contained a disclaimer stating that MetLife has not agreed to "any of the basic terms" of the mortgage, specifically "including ... the conditions upon which any subordinate mortgage financing would be permitted." Relying on MetLife's alleged contrary oral representation that a "workable [refinancing] solution" preserving the third deed of trust would be found, Warner signed the agreement and paid MetLife the $600,000 fee.

In late April 1996, MetLife advised Warner that "highly placed" management at MetLife were not willing to accept the third deed of trust. Rather, MetLife would refinance Warner's property only if the third deed of trust were released and additional security were obtained from other lenders. Because MetLife's position on the third deed of trust was a "deal breaker," the negotiations ended. Warner thereafter filed the present action, claiming primarily that it was fraudulently induced into entering the negotiation agreement. In brief, the complaint alleged that, to induce Warner to enter into the negotiation agreement, MetLife misrepresented its intent to offer Warner a refinancing arrangement preserving the third deed of trust. Warner added claims of unjust enrichment, breach of the duty to negotiate in good faith, and mutual mistake of fact.

The district court dismissed the complaint pursuant to Rule 12(b)(6). With respect to the fraudulent-inducement claim, the district court held that Warner's reliance on MetLife's representation was unreasonable be-

cause of the specific disclaimer in the negotiation agreement stating that MetLife had not agreed to "any of the basic terms" of the mortgage, including the preservation of subordinate financing. In addition, the court rejected Warner's argument that, because MetLife's intent to preserve the subordinate deeds was a fact only it could know, its reliance was reasonable despite the disclaimer. The court reasoned that the peculiar-knowledge exception on which Warner's argument relies applies only to representations of facts underlying a contract, not to representations of a party's intent to uphold its contractual obligations. Warner then brought the instant appeal.

## DISCUSSION

■ Under the New York law of fraudulent inducement, "a specific disclaimer [in an agreement] destroys the allegations in [a] plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations." *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 599 (1959). There is one long-recognized exception to this rule—the peculiar-knowledge exception. That exception holds that if the allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations. *See Yurish v. Sportini,* 123 A.D.2d 760, 507 N.Y.S.2d 234, 235 (App.Div. 1986); *see also Danann,* 184 N.Y.S.2d 599, 157 N.E.2d at 600 (recognizing and preserving this exception).

■ Another line of cases in the New York law of fraudulent inducement involves the role of intent. The New York Court of Appeals has recognized that "a statement of present intention is . . . a statement of a material existing fact, sufficient to support a fraud action." *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 835 (1958).

■ However, the New York Court of Appeals has not, as far as we can discern, squarely addressed the argument put forth by Warner: the peculiar-knowledge excep-

tion and the materiality of present intent can be integrated so that Warner's alleged oral misrepresentation of its intent regarding subordinate mortgage financing trumps the specific written contractual provision disclaiming that intent. We hold that these doctrines cannot be merged to form such a rule, at least in the narrow context of negotiation agreements. We do so for two reasons.

First, the peculiar-knowledge exception is designed to address circumstances where a party would face high costs in determining the truth or falsity of an oral representation, *see Yurish,* 507 N.Y.S.2d at 235, and those costs are sufficiently great to render reliance upon the representation reasonable, *see Danann,* 184 N.Y.S.2d 599, 157 N.E.2d at 600. The facts here do not fit that mold. The negotiation agreement specifically disclaimed any agreement on subordinate financing. Warner alleges that MetLife made oral statements inconsistent with that disclaimer. Warner's costs in determining whether such an agreement existed were not high. Warner argues that it could not have known of MetLife's private intent, but the existence or non-existence of an agreement on the retention of subordinate financing was well within Warner's knowledge, as was its own peculiar knowledge that the retention of such financing was a deal-breaker. Moreover, Warner could have insisted that the written contract terms reflect any oral undertaking on a deal-breaking issue; such a provision would go far to assure that the undertaking was understood and authorized at the echelon of MetLife's management at which it would have to be performed. Unlike the typical case involving the peculiar-knowledge exception, the subject of the alleged misrepresentation—whether the retention of subordinate financing was agreed upon or not—was not so much a fact going to the value of the negotiation agreement as it was a matter going to the terms of that agreement.

For similar reasons, Warner's reliance on the alleged misrepresentation was not reasonable. Signing a disclaimer denying the existence of such an agreement was simply not consistent with Warner's own belief that such an agreement existed. Relying on such an oral representation in the face of a de-

mand for a written disclaimer that specifically denies the substance of the representation is unreasonable.

Second, the rule pressed by Warner might greatly lessen the useful role disclaimers play in negotiation agreements. Disclaimers regarding a party's prior agreement to particular terms may be necessary to induce a potential lender or other party to enter into negotiation agreements. A party's use of such disclaimers in negotiation agreements is intended not only to avoid liability if the negotiations fail but also to avoid lawsuits, or at least lawsuits that cannot be quickly dismissed. The rule Warner presses would essentially negate such disclaimers by allowing naked allegations of prior oral assurances to trump at the pleading and summary judgment stage even the most explicit disclaimer in a negotiation agreement. The disclaiming party would always be forced to settle or go to trial, and perhaps lose on, every fraudulent-inducement claim supported by the bare allegation that it orally misrepresented its intent regarding a term of a loan. The absence of any means to avoid such costly litigation might well deter some lenders from entering into negotiation agreements and cause fewer loans to be negotiated.

With respect to the other issues on appeal, we affirm for substantially the reasons stated in Judge Sotomayor's opinion. *See Warner Theatre Assocs. Ltd. Partnership v. Metropolitan Life Ins. Co.,* 97 CIV. 4914(SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997). In addition, given appellant's failure to move the district court for leave to amend its complaint, we decline the invitation to grant such leave now.

We therefore affirm.