■ SABRE INTERNATIONAL SECURITY, LIMITED, Respondent, v VULCAN CAPITAL MANAGEMENT, INC., et al., Defendants, and VULCAN POWER SERVICES LLC et al., Appellants. [944 NYS2d 36]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered July 8, 2010, to the extent appealed from, awarding plaintiff $370,406.50, and bringing up for review an order, same court and Justice, entered on or about May 27, 2010, which granted plaintiff's motion for summary judgment on the second cause of action (account stated) as against defendants Vulcan Power Services LLC (Vulcan Power) and Vulcan Energy Solutions LLC (Vulcan Energy) (collectively defendants) and granted defendants' motion for summary judgment dismissing the second amended complaint, only to the extent of dismissing the complaint against defendants Vulcan Capital Management, Inc. and Graham, and dismissing the claims for consequential and punitive damages and attorneys' fees against the remaining defendants, unanimously reversed, on the law, without costs, the judgment vacated, plaintiff's motion denied, and defendants' motion granted as to the causes of action for promissory estoppel, intentional or negligent representation, and fraud against defendants, and as to the cause of action for unjust enrichment as against defendant Vulcan Power.

In the fall of 2004, defendant Vulcan Energy and nonparty Vulcan Advanced Mobile Power Systems LLC (Vulcan Advanced) sought contracts with the Iraqi Ministry of Electricity (MOE) to install, repair and maintain power plants in Iraq. In connection with those efforts, their president, Ford F. Graham, negotiated an oral agreement with David Johnston, a former employee of plaintiff, under which plaintiff would provide security services for Vulcan Energy and Vulcan Advanced's personnel during travel to Iraq, both before and after Vulcan Energy or Vulcan Advanced entered into contracts with MOE. While Graham avers that the parties contemplated that a written agreement would be entered into once Vulcan Energy or Vulcan Advanced obtained a contract from MOE, no such agreement was ever drafted or signed, although Vulcan Energy entered into a contract with MOE on February 21, 2005 for the Mulla Abdulla project.

On December 2, 2004, Kev Gallagher, then plaintiff's director of finance, sent Graham two invoices addressed to Vulcan Power in the amounts of $129,350 and $41,289, respectively, for precontract security services allegedly provided by plaintiff to one or more Vulcan entity in October and November 2004. On February 22, 2005, Gallagher sent Graham a third invoice addressed to Vulcan Power in the amount of $76,304 for additional precontract security services for that month. While plaintiff did not render any security services to Vulcan Power, it claims that Graham directed that the invoices be addressed to that entity, which is a subsidiary of Vulcan Energy.

When the invoices remained unpaid, plaintiff commenced this action against Vulcan Energy, Vulcan Power, Vulcan Capital Management, Inc. (Vulcan Capital), and Graham, seeking payment under the theories of breach of an oral contract and an account stated, or, alternatively, promissory estoppel, unjust enrichment, intentional or negligent representation, and fraud. Plaintiff alleged that it had a "legally binding oral agreement" to "provide specific security services for Defendants' representatives in Iraq in exchange for compensation at agreed-upon rates and prices," that it provided such services to defendants in February 2005 and November 2004, and that defendants received and retained the invoices for those services for more than three years without objection.

Defendants moved for summary judgment dismissing the second amended complaint, asserting that plaintiff could not support any of its claims with competent evidence because it had lost its records in Iraq and did not have any witnesses who participated in the original contract negotiations. Alternatively,

defendants moved to dismiss the action as to defendants Vulcan Capital, Vulcan Power, and Graham, and to dismiss plaintiff's claims for punitive damages and attorneys' fees. Plaintiff moved for summary judgment on its breach of contract and account stated claims, now claiming that defendants had acquiesced and ratified express writings titled "Vulcan Capital Cost Proposal" and "Sabre Standard Terms and Conditions." Supreme Court granted plaintiff summary judgment on its account stated claim and granted defendants' motion for summary judgment to the extent of dismissing the action as to Vulcan Capital and Graham, and dismissing plaintiff's claims for consequential and punitive damages and attorneys' fees against all defendants. Defendants appeal.

Questions of fact and credibility exist with respect to the existence of a binding oral agreement between plaintiff and defendants, and the terms thereof, rendering summary judgment in favor of either side on the first cause of action, for breach of an oral contract, inappropriate (*see Pryor & Mandelup, LLP v Sabbeth*, 82 AD3d 731, 732 [2011]; *Mirchel v RMJ Sec. Corp.*, 205 AD2d 388, 389-390 [1994]).

Graham avers that the agreement to pay plaintiff was contingent on Vulcan Energy's or Vulcan Advanced's obtaining the contract and receiving payments from MOE, the latter of which never occurred, and that in any event there was no agreement as to the price for precontract services or for any entity other than Vulcan Energy or Vulcan Advanced to pay plaintiff. Graham asserts that, pursuant to the contingency agreement, he requested that plaintiff provide invoices to show the payments it would expect if, as and when Vulcan Energy and Vulcan Advanced received funds from MOE, for the sole purpose of enabling those entities to estimate costs as they negotiated power plant contracts. In support, defendants submitted e-mails from David Johnston, an employee of plaintiff, indicating his willingness to work within the "financial constraints" and "guidelines" outlined by Graham. Defendants also submitted Graham's May 10, 2005 e-mail stating, "I need to get full list of back bills so we can pay these next week from LC payments"; his September 13, 2005 e-mail advising plaintiff that "it look[s] like we might actually be paid next week/week after" and "will take care of your bill"; and an e-mail in which Graham, in response to a June 2, 2005 demand for payment from plaintiff, states: "I believe your facts are not correct. We have a commercial agreement [pay when we are paid] with your firm dating from when your officers came to New York and had three days of meetings with us. We will honor that agreement."

While this evidence would appear to support Graham's contentions as to the terms of the oral agreement, there are no e-mails that explicitly reference a contingency agreement, and Graham's contentions are disputed by plaintiff's employee, Mahesh Nambirajan. Although Nambirajan was not involved in the original negotiations with Graham, he communicated with Graham regarding the payment of the invoices. Further, Graham's version of the oral agreement appears to conflict with certain documentary evidence and testimony.

On January 27, 2005, Gallagher sent Graham an e-mail asking when the first two invoices would be paid. This was before Vulcan Energy entered a contract with MOE, and is inconsistent with the alleged contingency agreement. Graham also testified that he asked two of his employees to make sure that plaintiff's invoices were reasonable in terms of cost and whether the work was actually performed, and was told that the services listed on the invoices had been provided. This is corroborated by a February 22, 2005 e-mail from Graham to one employee asking him to look over the February 22, 2005 invoice "before we pay," and the employee's reply that: "Yes[,] that invoice is correct. Bob and I had already reviewed it before it was issued via e-mail. We asked [Gallagher] to go ahead and send it out to us so when we issue payment to them it will be all inclusive of all money owed."

Other evidence includes Graham's testimony that he authorized an employee to offer plaintiff $100,000 as a payment toward the amounts that were outstanding, although defendants had not been paid by MOE; Graham's February 2006 e-mail advising plaintiff that "I had not forgotten you. Our bank refinancing had been delayed . . . Estimate end of Feb close"; and his July 19, 2006 e-mail advising plaintiff that he had closed on one of three interim financing deals and "hope[d] to have the second bank deal closed within two or three weeks and to begin to pay down your bill." This evidence is inconsistent with defendants' claims that precontract services were to be provided without charge based on the agreement that plaintiff would become the "primary security firm" for Vulcan Energy and Vulcan Advance if one or both of them won a contract with MOE.

Graham also testified that while he said something about the invoices being addressed to Vulcan Power to his "guys in the field," he never said anything about it to Gallagher and did not know if his "guys" followed up. Insofar as Graham states that there was no agreement as to price for precontract services, he acknowledges that he requested the invoices for use in prepar-

ing cost estimates and never challenged the rates reflected therein. In light of the foregoing, Graham's testimony and the documentary evidence submitted by defendants do not conclusively establish that there was no oral agreement to compensate plaintiff for precontract security services. A review of the record as a whole demonstrates that questions of fact exist as to whether and to what extent plaintiff and defendants' pattern of conduct and performance would lead a reasonable and objective person to conclude that a binding agreement governing the precontract phase was reached by the parties under which plaintiff was entitled to payment for security services rendered (*see Coldwell Banker Hunt Kennedy v Wolfson*, 69 AD3d 492 [2010]; *Buhler v Maloney Consulting*, 299 AD2d 190, 191-192 [2002]). There is no merit to plaintiff's new claim that a written contract covering precontract security services exists based on a document titled "Vulcan Capital Cost Proposal/Sabre Standard Terms & Conditions" that it forwarded to Graham in February 2005.

Plaintiff is not entitled to summary judgment on its second cause of action for an account stated. "[A] claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract" (*Martin H. Bauman Assoc. v H & M Intl. Transp.*, 171 AD2d 479, 485 [1991]; *see also Unclaimed Prop. Recovery Serv., Inc. v UBS PaineWebber Inc.*, 58 AD3d 526 [2009]). "[A]llegedly unfulfilled contractual conditions precedent to [a] defendant's payment obligation negate any inference of an implied agreement by [the] defendant that the amounts claimed in plaintiff's invoices were then due," and preclude the existence of an account stated (*see Enviroclean Servs., LLC v CEM, Inc.*, 12 AD3d 1042, 1043-1044 [2004]). Here, issues of fact exist as to whether the parties had a binding oral contract and as to whether plaintiff agreed to a contingent fee arrangement (*see e.g. Ryan Graphics, Inc. v Bailin*, 39 AD3d 249, 251 [2007]; *Erdman Anthony & Assoc. v Barkstrom*, 298 AD2d 981, 982 [2002]).

Defendant Vulcan Energy is not entitled to summary judgment on plaintiff's fourth cause of action, for unjust enrichment. Although "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]), "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will

not be required to elect his or her remedies" (*Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208, 220 [2008]; *Schwartz v Pierce*, 57 AD3d 1348, 1353 [2008], *lv denied* 12 NY3d 707 [2009]; *Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 228 [1993]). Here, defendants allege, among other things, that there was no binding contract for precontract services because there was no agreement as to price. Accordingly, plaintiff does not have to elect its remedies with respect to its claims against Vulcan Energy. However, plaintiff cannot prove unjust enrichment as against Vulcan Power because plaintiff did not provide Vulcan Power with any services.

Defendants are entitled to summary judgment dismissing plaintiff's fifth cause of action, for intentional and/or negligent misrepresentation. To the extent plaintiff alleges intentional misrepresentation, the claim is duplicative of the sixth cause of action for fraud. To the extent plaintiff alleges negligent misrepresentation, defendants may not be held liable because they are not professionals, and had a commercial—not a special—relationship with plaintiff (*see Kimmell v Schaefer*, 89 NY2d 257, 263-264 [1996]; *Parisi v Metroflag Polo, LLC*, 51 AD3d 424 [2008]).

Defendants are also entitled to summary judgment dismissing plaintiff's sixth cause of action, for fraud. The fraud claim "is based on alleged misrepresentations of future intention" (*Parisi*, 51 AD3d at 424) and plaintiff's allegations are insufficiently specific (*see e.g. Friedman v Anderson*, 23 AD3d 163, 166-167 [2005]).

Defendants are entitled to summary judgment dismissing plaintiff's third cause of action, for promissory estoppel. To establish a claim for promissory estoppel, a plaintiff must allege "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise" (*Gurreri v Associates Ins. Co.*, 248 AD2d 356, 357 [1998]; *Matter of Carr*, 99 AD2d 390, 394 [1984], *appeal dismissed* 62 NY2d 802 [1984]). Here, the claim must be dismissed because Nambirajan could not say who made the promises, and therefore plaintiff cannot say it relied on defendants' promises to its detriment. Concur—Andrias, J.P., Friedman, DeGrasse, Freedman and Manzanet-Daniels, JJ.