The ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI, Plaintiff,

v.

HEALTH CARE SERVICE CORPORATION, Defendant.

16–cv–8756 (JSR)

United States District Court, S.D. New York.

Signed February 15, 2017

Donn Brian Hufford, Jason Samuel Cowart, Shawn Patrick Naunton, Zuckerman, Spaeder LLP, New York, NY, for Plaintiff.

Thomas C. Hardy, Martin J. Bishop, Reed Smith LLP, Chicago, IL, Shmuel Kadosh, Reed Smith LLP, New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, United States District Judge

Before the Court is the motion of defendant Health Care Service Corporation ("HCSC") to dismiss the complaint of plaintiff The Icahn School ,of Medicine at Mount Sinai ("Mount Sinai") alleging claims of negligent misrepresentation (Count I), promissory estoppel (Count II), and violations of New York General Business Law ("GBL") § 349 (Count III). For the following reasons, the Court dismisses Mount Sinai's negligent misrepresentation claim without prejudice, and denies defendant's motion with regard to the remaining claims.

On a motion to dismiss, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). The Court, however, need not accept allegations that are vague or conclusory. See Guerrero v. FJC Sec. Servs. Inc., 423 Fed.Appx. 14, 16 (2d Cir. 2011).

The relevant allegations of Mount Sinai's complaint are as follows. Mount Sinai employs and affiliates with medical providers at hospitals in New York City and treats patients insured by defendant HCSC. Compl. ¶¶ 1–2. Mount Sinai is "out-of-network" with respect to HCSC, in that it does not have a contract dictating how much it may charge for medical services. Id. ¶ 8. Instead, Mount Sinai bills whatever it deems appropriate. Id.

At the outset of providing service to patients insured by HCSC, Mount Sinai decides whether to provide medical treatment and how much to charge, based on how much HCSC is willing to reimburse it for services. Id. at ¶ 11. The terms of defendant's insurance plans with these insureds set forth HCSC's methodology for determining reimbursement rates. Id. at ¶ 8. Since Mount Sinai does not possess copies of these insurance plans, and the documents are not "easily accessible," HCSC is Mount Sinai's "best source of insurance related information." Id. at ¶ 11.

Given these circumstances, HCSC "instructs" Mount Sinai to contact it prior to giving out-of-network care to any of its insureds. Id. at ¶ 9. Specifically, Mount Sinai calls a telephone number listed on the insured's insurance card to verify coverage for medical benefits, including "the methodology that HCSC will utilize to determine the amount (if any) that it will pay to Mount Sinai for providing the care." Id. Mount Sinai then transmits this information to the insured to advise him or her of payment responsibility. Id. at ¶ 20. Mount Sinai conducts these verification calls several times a day and considers reimbursement information "critically important." Id. at ¶ 2.

On November 10, 2016, Mount Sinai filed suit against HCSC alleging claims of negligent misrepresentation, promissory estoppel, and violations of GBL § 349. The

complaint alleges that on six occasions, HCSC stated that it would reimburse Mount Sinai using a particular rate but ultimately paid significantly less. Id. at ¶¶ 24–54. Mount Sinai alleges that these six "illustrative examples" show that "HCSC has regularly misrepresented to Mount Sinai the reimbursement that HCSC provides for medical services" and that the "frequency with which HCSC has deviated from its pre-service representations … indicates that such misrepresentations are a standard practice of HCSC." Id. at ¶¶ 24, 54, 56. The complaint further alleges that HCSC knew that Mount Sinai would rely on HCSC's reimbursement information, that HCSC provided the information to Mount Sinai for that purpose, and that HCSC encouraged Mount Sinai to rely upon the information. Id. at ¶ 19.

HCSC moved to dismiss on December 20, 2016 for failure to state a claim with respect to the six verification calls identified in the complaint and any other calls between the parties (what HCSC terms the "Unidentified Benefits Claims"). Mount Sinai filed answering papers on January 10, 2017; HCSC filed reply papers on January 17, 2017; and the Court heard oral argument on February 1, 2017.

■ The Court begins with Mount Sinai's claim for negligent misrepresentation. In order to state a claim for negligent misrepresentation, a plaintiff must show "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it;

and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citation omitted). HCSC challenges the sufficiency of the pleadings as to three of these elements: the duty to give correct information (element one), the existence of a false representation (element two), and reasonable reliance (element five).

■ The Court agrees that Mount Sinai has not pleaded facts showing that HCSC had a duty to give correct information (element one). In determining whether such a duty exists, the court considers (i) "whether the person making the representation held or appeared to hold unique or special expertise;" (ii) "whether a special relationship of trust or confidence existed between the parties;" and (iii) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Kimmell v. Schaefer, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).[1] Here, HCSC principally argues that it does not have "unique" or "specialized" expertise because it is not Mount Sinai's "only source" of reimbursement information. The Second Circuit has held, however, that the information at issue need only be "peculiarly within [defendant's] knowledge," Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co., 478 Fed.Appx. 679, 683 (2d Cir. 2012), such as "where a party would face high costs in determining the truth or falsity of an oral representation, and those costs are sufficiently great to render reliance upon the representation reasonable." Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co., 149 F.3d 134, 136 (2d Cir. 1998) (internal citations omitted). Mount Sinai nonetheless has failed to make such a showing

1. A "sparsely pled" special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where "the complaint emphatically alleges the other factors enunciated in Kimmell." Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001).

because it does not allege that it would be impractical to obtain the information from the insured; Mount Sinai alleges only that the insured's documents are not "easily accessible." Compl. at ¶ 11. While Mount Sinai attempts to fill this gap by arguing in its papers that it would be "very difficult, if not impossible" to get the information from the insured, the complaint makes no such allegations.

Furthermore, the complaint's allegations concerning the remaining two factors are conclusory. The complaint alleges that HCSC "instructs" Mount Sinai to contact it prior to treating any insured and that HCSC "encouraged" Mount Sinai to rely upon the information, but gives no explanation of how or why this is the case. The complaint also states that HCSC was "aware" that Mount Sinai would rely on the reimbursement information and that HCSC supplied it for that purpose, but these are legal conclusions without factual support. Compl. at ¶ 19.[2]

Accordingly, the Court finds that Mount Sinai has failed to allege facts showing that HCSC had a duty, as a result of a special relationship, to give correct information.[3]

On the other hand, the Court finds HCSC's challenges to the second and fifth elements (the existence of a false representation and reasonable reliance) to be without merit. As to the second element, HCSC argues that the pleadings fail to allege any misrepresentations because HCSC's statements concerned only future promises of payment. While it is true that to plead a false statement, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events," Hydro Inv'rs, 227 F.3d at 21–22,[4] HCSC is incorrect that Mount Sinai only alleges misrepresentations of future fact. The complaint states that the terms of the HCSC plans set forth an existing methodology to determine reimbursement, see Compl. ¶ 8, and that HCSC

2. At oral argument on the motion to dismiss, counsel for the plaintiff attempted to buttress these allegations by pointing out that "there's a number on the insurance cards for providers to call." See Transcript dated February 1, 2017 at 14. If the provision of one's number were sufficient to establish a duty to give correct information, then any business card owner would be potentially liable for negligent misrepresentation, which is clearly not the law.

3. HCSC also argues that as a matter of law, an insurer does not owe a duty to give correct information to a medical provider. HCSC is mistaken. In the two cases HCSC cites, Midpoint Serv. Provider, Inc. v. CIGNA, No. 98 CIV 5987 HB, 2000 WL 272306, at *5 (S.D.N.Y. Mar. 10, 2000) and Stafkings Health Care Sys., Inc. v. Blue Cross, 221 A.D.2d 908, 635 N.Y.S.2d 387, 388 (4th Dept. 1995), the courts held that a medical provider did not create a special relationship by making a "single, unsolicited telephone inquiry" to the insurer. The frequency of the parties' communications here, on the other hand, is circumstantial evidence of a special relationship to give correct information. Indeed, it is hard to believe that HCSC would spend the time, energy, and resources of answering verification calls on a daily basis—oftentimes multiple times a day—if it did not intend for Mount Sinai to rely on its representations in a meaningful way.

4. To be sure, representations concerning future events are actionable if the speaker knows the representation to be false or has no reasonable basis in fact for making the representation. See Ballone v. Eastman Kodak Co., 109 F.3d 117, 126 (2d Cir. 1997). To this end, Mount Sinai argues in its papers that at the time that HCSC gave the incorrect information, "HCSC knew it was constrained by internal policy and plan terms that dictated a different, and much lesser, reimbursement methodology." Plaintiff The Icahn School of Medicine at Mount Sinai's Memorandum of Law in Opposition to Defendant Health Care Service Corporation's Motion to Dismiss ("Pl.'s Opp.") at 10–11, ECF No. 24. While these allegations may show the existence of a false representation, they are not pled in the complaint.

misrepresented this methodology on the verification calls, see id. at ¶ 62 ("HCSC's statements to Mount Sinai about the level of reimbursement available under its Patient's plan were frequently incorrect and understated the level of reimbursement that HCSC ultimately paid."). This is sufficient to establish a false representation.

HCSC's further contention that Mount Sinai's reliance was unreasonable (the fifth element) is similarly without merit. In essence, HCSC argues that it misrepresented its reimbursement rates so often that Mount Sinai should have known that HCSC could not be trusted. While HCSC's counsel is quick to sacrifice the company's reputation, HCSC has not shown that Mount Sinai's reliance was unreasonable. In general, the reasonableness of a plaintiff's reliance is a "nettlesome" and "fact-intensive" question that the court should "not lightly dispose of at the motion-to-dismiss stage." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 186 (2d Cir. 2015) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)). Moreover, a party's sophistication does not make reliance unreasonable where it is not obvious on the face of the complaint that the plaintiff could have uncovered the alleged misrepresentations through ordinary due diligence. See id.

Here, HCSC's argument fails for the simple reason that the complaint only alleges six misrepresentations—not the enormous volume that HCSC now seeks to use to its advantage. Moreover, even if HCSC did deceive Mount Sinai on a regular basis, Mount Sinai's reliance would still be reasonable because HCSC does not argue that Mount Sinai failed to conduct ordinary due diligence prior to relying on the quoted rates. To the contrary, as one sister circuit has noted, it is "customary practice" for medical providers to contact insurers prior to treatment "to verify eligibility and coverage" and, if "the provider confirms that a patient has health care insurance that covers a substantial part of the expected costs of the health care, ... admit the patient without further ado." Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co., 662 F.3d 376, 381 (5th Cir. 2011), reinstated en banc, 698 F.3d 229 (5th Cir. 2012) (alterations in original) (quoting Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 246 (5th Cir. 1990)). The complaint sets forth facts showing that Mount Sinai's practice is not materially different.

Furthermore, as Mount Sinai argues in its briefing, HCSC's misrepresentations only became clear months after they were made—following a lengthy appeals process—and that given the high volume of communications between Mount Sinai and HCSC, it then took time for Mount Sinai to learn that it had been misled. See Pl.'s Opp. at 12, 19. HCSC does not attempt to rebut these arguments, and the Court accordingly finds HCSC's position unconvincing.[5]

---

5. At oral argument on the motion to dismiss, HCSC's counsel raised a new argument that it was unreasonable for Mount Sinai to rely on HCSC's oral representations and should have demanded written confirmation, citing Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535–36 (2d Cir. 1997). See Transcript dated February 1, 2017 at 7. HCSC's newfound reliance on Lazard is misplaced. In Lazard, the Second Circuit addressed whether it was reasonable for a party during contract negotiations to rely on oral representations made by the defendant prior to the performance of any due diligence or the formation of a written agreement. Id. The court found that this issue raised disputes of material fact and reversed the decision below holding (on motion for summary judgment) that plaintiff's reliance was unreasonable. Id. Here, not only is Lazard factually distinguishable from the present case, because it involved ongoing contractual negotiations, it also shows that the allegations supporting the reasonability of Mount Sinai's reliance are

For the foregoing reasons, the Court holds that Mount Sinai has failed to state a claim for negligent misrepresentation, by failing to show that HCSC had a duty to give correct information, but grants Mount Sinai leave to amend the complaint (within the next two weeks) to add additional allegations to try to cure this defect.

■ The Court next addresses whether Mount Sinai has stated a claim for promissory estoppel. A claim for promissory estoppel requires "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise." Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgt., Inc., 95 A.D.3d 434, 439, 944 N.Y.S.2d 36 (1st Dept. 2012). In turn, HCSC argues that Mount Sinai does not identify with sufficient particularity the promises made on the verification calls for the so-called Unidentified Benefits Claims and that Mount Sinai has not shown reasonable reliance. HCSC's arguments are without merit for the reasons set forth above: Mount Sinai is only presently pursuing claims in connection with the six, specifically-plead verification calls in the complaint and has alleged facts showing that its reliance was reasonable. The Court accordingly finds that Mount Sinai has stated a claim for promissory estoppel.

■ HCSC lastly challenges the sufficiency of Mount Sinai's claim for violations of GBL § 349. To adequately plead a GBL § 349 claim, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materi-

ally misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks omitted). In addition, a plaintiff must plausibly plead that the challenged "acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). The New York Court of Appeals has emphasized that "section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language." Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 3 N.Y.3d 200, 785 N.Y.S.2d 399, 818 N.E.2d 1140 (2004). As such, § 349 "appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad," as "[t]he reach of [this] statute [ ] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York]." Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999) (internal quotation marks omitted).

■ Here, HCSC argues that the complaint fails to show "consumer-oriented conduct" because HCSC made its misrepresentations only to Mount Sinai. While it is undisputed that Mount Sinai is not a "consumer" under the statute,[6] Mount Sinai has plead that it transmitted HCSC's alleged misrepresentations to patients during pretreatment consultations so that patients "could consider this [payment] infor-

facts that the Court must assume as true for the purposes of HCSC's motion to dismiss.

**6.** A "consumer" under the statute is narrowly defined as "one who purchase[s] goods and services for personal, family or household use." U1IT4less, Inc. v. FedEx Corp., 896 F.Supp.2d 275, 295 (S.D.N.Y. 2012) (empha-

sis in original). Accordingly, a business entity ordinarily is not such a "consumer." Id.; Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc., No. 13-cv-6551(TPG), 2014 WL 4058321, at *7 (S.D.N.Y. Aug. 15, 2014) ("[P]hysicians requesting payment from insurers are not 'consumers' under the statute").

mation in determining whether to proceed with treatment." See Compl. ¶ 20. This is sufficient to show consumer-oriented conduct. See, e.g., Karlin, 93 N.Y.2d at 292–93, 690 N.Y.S.2d 495, 712 N.E.2d 662 (holding that plaintiffs had stated a claim under GBL § 349 where defendants made misrepresentations to patients and others, "including physicians who refer patients to the IVF America programs.").

The Court finds similarly unconvincing HCSC's contention that its conduct does not have a broader impact on consumers. The Court of Appeals has held that GBL § 349 "does not require a repetition or pattern of deceptive behavior." Oswego, 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741. Instead, the law was intended to "afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds," id. and even "potential" harm to consumers is actionable, see id. at 27, 623 N.Y.S.2d 529, 647 N.E.2d 741. Here, Mount Sinai's six "illustrative examples" span a three-year period of time, demonstrating that HCSC's misrepresentations are not an isolated occurrence. Mount Sinai has further alleged that after HCSC failed to make payments, patients became liable for thousands of dollars in health care costs. See Compl. ¶ 8 ("Mount Sinai may 'balance bill' the patient for the difference between Mount Sinai's billed charge and the portion it is paid by HCSC."); id. at ¶ 76 ("HCSC's misstatements to providers like Mount Sinai subject HCSC insureds to added potential liability . . . ."). Although Mount Sinai has not taken steps to collect against these patients, their financial liability is sufficient to establish an injury to consumers.[7] Mount Sinai accordingly has alleged facts showing violations of GBL § 349.

For the foregoing reasons, the Court dismisses Mount Sinai's negligent misrepresentation claim without prejudice, and denies defendant's motion with regard to the remaining claims. The Clerk of the Court is directed to close docket number 22.

SO ORDERED.

---

7. The two decisions cited by HCSC dismissing § 349 claims are not to the contrary. See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc., No. 13–CV–6551 TPG, 2014 WL 4058321, at *7 (S.D.N.Y. Aug. 15, 2014); Josephson v. United Healthcare Corp., No. 11–CV–3665 JS ETB, 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012).

In these cases, which also involved suits by physicians against insurers, there were no allegations that (1) the insurers had made misrepresentations to the physicians; (2) that the physicians communicated these misrepresentations to patients; and (3) that patients were billed the balance of the procedures when the insurers failed to pay.