Lerner v Newmark & Co. Real Estate, Inc. (2019 NY Slip Op 08611)





Lerner v Newmark & Co. Real Estate, Inc.


2019 NY Slip Op 08611


Decided on December 3, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 3, 2019

Acosta, P.J., Renwick, Mazzarelli, Kapnick, JJ.


10488 657273/17

[*1] Justin Lerner, Plaintiff-Appellant,
v
Newmark & Company Real Estate, Inc., et al., Defendants-Respondents.


Ronald P. Hart, P.C., New York (Ronald P. Hart of counsel), for appellant.
Miguel A. Lopez, New York, for respondents.



Order, Supreme Court, New York County (Andrea Masley, J.), entered September 18, 2018, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss the causes of action for breach of contract, unjust enrichment, and fraud, and denied plaintiff's cross motion for leave to amend the complaint and for issuance of judicially ordered subpoenas duces tecum pursuant to CPLR 3119, unanimously modified, on the law, to deny defendants' motion as to the causes of action for breach of contract and unjust enrichment, and grant plaintiff's motion to the extent of granting leave to serve so much of the proposed amended complaint as pertains to the breach of contract and unjust enrichment causes of action, and otherwise affirmed, with costs to be paid by defendants to plaintiff.
Plaintiff, a licensed real estate broker, alleges that, in November 2014, he and defendant Newmark & Company Real Estate, Inc. (Newmark), entered into an "Engagement Agreement," for a two-year term, pursuant to which plaintiff was to be paid commissions as set forth in the appended Schedule 1. The Engagement Agreement recited that most of its provisions, expressly including Schedule 1, would survive its termination or expiration. Plaintiff alleges that the parties mutually agreed to his departure before the expiration of the two-year term. Hence, accepted as true, plaintiff's allegations establish that his departure was not a breach of the Engagement Agreement.
Moreover, even if plaintiff's departure were technically a breach of the Engagement Agreement, the agreement expressly provided that Schedule 1, which contained the commissions payment mechanisms, survived termination. Thus, the Engagement Agreement made no material distinction between termination with cause and termination without cause.
Schedule 1 set forth a mechanism for payment of commissions following the broker's departure. Viewed in the light most favorable to plaintiff (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-52 [2002]; Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976]), the complaint and supporting submissions establish that the parties set plaintiff's departure date as of March 14, 2016. Plaintiff submitted his list of pending transactions by April 11, 2016, within 30 days of the "termination date" as provided for in Schedule 1. Therefore, he was entitled to be paid his share of any commissions received for pending transactions within a specified time after his departure. However, while defendants have received covered commissions, they have refused to pay plaintiff his share. These allegations state a claim for breach of the Engagement Agreement's surviving payment mechanism (see Furia v Furia, 116 AD2d 694, 695 [2d Dept 1986]).[FN1]
Plaintiff has also stated a claim for breach of the Termination Agreement, dated June 16, 2016, and drafted by defendants themselves. The Termination Agreement on its face did little more than confirm the Engagement Agreement's post-termination provisions, including maintenance of confidentiality by plaintiff and non-solicitation of defendants' clients, and payment of commissions per the "pending list" mechanism of Schedule 1. Plaintiff complied with his obligations thereunder, including submission of his list of pending transactions as of the date of his departure.
It is true that neither party signed the Termination Agreement. However, where the evidence supports a finding of intent to be bound, a contract will be unenforceable for lack of signature only if the parties "positive[ly] agree[d] that it should not be binding until so reduced to writing and formally executed" (Matter of Municipal Consultants & Publs. v Town of Ramapo, 47 NY2d 144, 149 [1979]; Elizabeth St. v 217 Elizabeth St. Corp., 301 AD2d 481, 482 [1st Dept 2003]). While the Termination Agreement contained a counterparts clause and signature lines indicating that it could be accepted by signature and countersignature, it did not positively state that the parties could assent only by signing. By contrast, the Engagement Agreement, also drafted by defendants, expressly provided that "in unsigned form [it] does not become an offer of any kind and does not become capable of acceptance." Thus, defendants knew how to draft an agreement that could be accepted only by signature, but they did not so draft the Termination Agreement. The evidence, i.e., the parties' months-long email exchanges, during which plaintiff submitted his list of pending transactions, defendants drafted the Termination Agreement and forwarded it to plaintiff, and the parties disagreed about the extent to which transactions listed by plaintiff were covered, supports a finding that the parties intended to be bound by the Termination Agreement, despite their failure to sign it (see Kolchins v Evolution Mkts., Inc., 31 NY3d 100, 107-108 [2018]).
Credited as true, plaintiff's allegations establish that defendants accepted his resignation. They then drafted the Termination Agreement to lay out a framework for payment of commissions on transactions that he brokered but that closed only after his departure. Defendants then quibbled over the terms of payment, drawing out indefinitely the matter of payment, while controlling all information about which transactions had closed. Defendants' goal was to obstruct and refuse to pay commissions that plaintiff had earned by virtue of brokering the transactions. These allegations state a claim for unjust enrichment as an alternative to plaintiff's contract claims (see Sabre Intl. Sec., Ltd. v Vulcan Capital Mgt., Inc., 95 AD3d 434, 438-439 [1st Dept 2012]; Curtis Props. Corp. v Greif Cos., 236 AD2d 237 [1st Dept 1997]).
Plaintiff contends that defendants induced him to enter into the Termination Agreement, while, from the moment they conceived of the agreement, they had no intention of carrying out their end of the bargain. As a remedy for this alleged fraud, plaintiff seeks the same measure of damages as he demands on his contract claim. He makes no detailed factual allegations to support the claim of fraud, instead inferring from the fact that negotiations were drawn out, and ended up with non-payment, that the entire Termination Agreement was conceived of as a plot to withhold commissions that he had earned. Thus, he has failed to state a cause of action for fraud (see Cronos Group Ltd. v XComIP, LLC, 156 AD3d 54, 62-63 [1st Dept 2017]; MBIA Ins. Corp. [*2]v Credit Suisse Sec. [USA] LLC, 165 AD3d 108, 114 [1st Dept 2018]; MMCT, LLC v JTR Coll. Point, LLC, 122 AD3d 497, 499 [1st Dept 2014]).
Plaintiff's proposed amended complaint is substantially similar to the original complaint, asserting the same causes of action and adding a few allegations that serve chiefly to elaborate on the claim for breach of the Termination Agreement. Thus, plaintiff should be granted leave to serve the proposed amended complaint to the extent it pertains to the causes of action for breach of contract and unjust enrichment (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 580 [2015]).
Plaintiff requested, pursuant to CPLR 3119, that the court so-order subpoenas duces tecum to compel three persons located in California to produce documents. However, CPLR 3119 "provides a mechanism for disclosure in New York for use in an action that is pending in another state ..., not the other way around" (Matter of 91 St. Crane Collapse Litig., 159 AD3d 511, 512 [1st Dept 2018]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 3, 2019
CLERK



Footnotes

Footnote 1: At this early procedural juncture, we decline to dismiss the claim of breach of the Engagement Agreement as against defendant BGC Partners, Inc. While not a signatory to the contract, BGC is expressly referred to in the preamble as an affiliate of Newmark, and thus is arguably a party thereto. Thus, the cases cited by defendants for the proposition that "a person or entity who is not a party to a contract cannot be held liable for its breach" are inapposite (see Stern v H. DiMarzo, Inc., 19 Misc 3d 1144[A], 2008 NY Slip Op 51163[U], * 10 [Sup Ct, Westchester County 2008]; HDR, Inc. v International Aircraft Parts, 257 AD2d 603, 604 [2d Dept 1999]). Moreover, while Schedule 1 states that affiliates like BGC will not pay compensation under the contract, this does not necessarily compel the conclusion that the affiliates cannot be held liable for its breach.